Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00011-CV

## IN RE ESTATE OF CHARLES ERIC WHITING, DECEASED

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2010-PC-1060
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  October 12, 2011

AFFIRMED

Shannon Kate Spratt, individually and as next friend of Summer Spratt, appeals the probate court's "Order Finding Common Law Marriage," arguing the court erred in finding that Summer Spratt was not equitably adopted by decedent Charles Eric Whiting. We affirm the judgment of the probate court.

## BACKGROUND

Spratt and Whiting began dating in 1998 and moved in together six months later. Spratt's daughter, Summer, was three years old at the time Spratt met Whiting. Summer never knew her biological father, and his parental rights were terminated in 2005. By all accounts, Whiting treated Summer like his own daughter, and fully participated in rearing Summer. Whiting

referred to Summer as his daughter, and Summer referred to Whiting as her father. The three moved to San Antonio from South Carolina in December of 2005. Spratt and Whiting agreed to be married in August of 2007.

Whiting unexpectedly died intestate in March 2010. Subsequently, Whiting's biological daughter, Brittany Jo Brown, whom Spratt had never met, filed an application to determine heirship and application for independent administration, contending she was the sole heir of Whiting's estate. The applications were granted and Brown was declared to be the sole heir of Whiting's estate. Spratt then filed a motion to set aside the judgment declaring heirship, arguing she was Whiting's common law wife and that Summer was his adopted daughter. The parties proceeded to a bench trial on the issues of common law marriage and adoption by estoppel. Several witnesses testified to the loving relationships between Whiting and Spratt and Whiting and Summer. Multiple exhibits were offered to establish the father-daughter bond that existed between Whiting and Summer. Brown represented herself at trial and did not present any witnesses.

At the conclusion of the testimony, the probate court orally announced its ruling, stating, "I think Ms. Spratt is a common law spouse. But I - - it's difficult to prove the elements of equitable or informal adoption, and I don't think that that happened. So we have a spouse, but no legally recognized child, as in Summer. I understand they had a very close relationship. What exists emotionally doesn't necessarily exist legally." The probate court signed a final order to the same effect, finding and ordering that Spratt and Whiting entered into a common law marriage and were married on the date of Whiting's death. The court further found and ordered that there was no adoption by estoppel by Whiting of Summer. The probate court also signed Findings of Fact and Conclusions of Law. The court found that no evidence of an agreement by

Whiting to adopt Summer was presented at the bench trial, and concluded that Summer is not the child of Whiting. Spratt now appeals, challenging the probate court's finding that there was no evidence of an agreement by Whiting to adopt Summer.

## STANDARD OF REVIEW

In an appeal from a bench trial, a trial court's findings of fact have the same weight as a jury's verdict, and are reviewed for legal and factual sufficiency of the evidence. *See In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). "When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings." *See Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex. App.—Dallas 2008, pet. denied) (citation omitted).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citations omitted). In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is no evidence to support the finding, then we examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241.

For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside.

*See Dow Chem. Co.*, 46 S.W.3d at 242. We will set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Because the trial court acts as fact-finder in a bench trial, it is the sole judge of the credibility of witnesses. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

## ADOPTION BY ESTOPPEL

Adoption by estoppel is a remedy applied when efforts to adopt are ineffective because of failure to strictly comply with statutory adoption procedures or because, out of neglect or design, an agreement to adopt is not performed. *See Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 973-74 (1951); *Luna v. Estate of Rodriguez*, 906 S.W.2d 576, 579-80 (Tex. App.—Austin 1995, no writ). Parties who live in a parent-child relationship based on an unperformed agreement to adopt the child do not create the legal status of a parent and child, but a parent's promises and conduct can create an equitable adoption which allows the child to assert intestate succession rights to the parent's estate. *See Heien v. Crabtree*, 369 S.W.2d 28, 30 (Tex. 1963). The burden is on the proponent to establish the existence of the equitable adoption by a preponderance of the evidence. *Moran v. Adler*, 570 S.W.2d 883, 885 (Tex. 1978). An agreement to adopt between the parties, i.e., between the adoptive parent and the child, or between the adoptive parent and the natural parent, must exist before the trial court may apply the equitable doctrine of adoption by estoppel. *Cavanaugh*, 235 S.W.2d at 974; *In re Estate of Castaneda*, 687 S.W.2d 465, 466 (Tex. App.—San Antonio 1985, no writ). Proof of the

agreement does not require direct evidence; circumstantial evidence will suffice where it is clear, convincing, and unequivocal. *Cavanaugh*, 235 S.W.2d at 975, 978.

### *Evidence at Trial*

At the bench trial, Spratt testified that Whiting loved Summer so much that he would have stood in front of a bus for her. He referred to Summer as his daughter, and Summer referred to him as her father. Whiting listed Spratt as his wife and Summer as his daughter on his employment records. In that regard, Whiting told Spratt, "I made it official, I put you down, you're - - you're - - I put you down as a wife, and Summer as the child." Spratt also introduced several business records. Summer's school records listed Whiting as her father. Summer's dental and medical records also listed Whiting as her father. Whiting listed Summer as a dependent on his employee health benefit plan, as well as on his life insurance. On his Aetna Life Insurance "Life and Disability Enrollment Change Request" form, Whiting wrote the following in the remarks section related to covered dependents: "common-law wife & her daughter = employee's dependents."

Spratt also introduced numerous greeting cards that were exchanged between Summer and Whiting, all referencing their love and affection for one another as daughter and dad, as well as photographs of Whiting and Summer enjoying time together. Spratt also introduced a DVD she produced to show the life that she, Whiting, and Summer shared together as a family.

Barbara Spratt, Spratt's mother, echoed her testimony, stating Whiting thought of Summer as his daughter and that he was always there for her the last twelve years of her life. Spratt's aunt, Jane Gonyea, stated that "Summer and Chuck were father and daughter," and that Whiting told her he loved his daughter so very much. Gonyea confirmed that Whiting never

talked about his biological daughter, Brown, and that any reference to "his daughter" was to Summer.

In addition, Juan Castilleja, Whiting's co-worker, testified. Castilleja and Whiting became close friends and Castilleja recounted how Whiting cared for Summer and how proud he was of her. Castilleja stated he never knew that Summer was not Whiting's biological daughter. Several neighbors of the family also testified. Nicole Thompson stated she heard Whiting refer to Summer as his daughter, and she was surprised to learn that Summer was not Whiting's biological daughter. Misty Tomberlin also stated she heard Summer address Whiting as "Dad" and that Whiting introduced himself to her as "Summer's dad." Joseph Martinez stated Whiting referred to Summer as his daughter. Martinez was aware that Summer was not Whiting's biological daughter, but that Whiting told Martinez he considered Summer his daughter.

Finally, Summer testified. She highlighted for the probate court the life she had with Whiting, whom she considered her father. He helped her with her homework, attended PTA meetings and other school functions, taught her to ride a bike, and disciplined her as necessary.

*Analysis*

After reviewing the evidence presented in favor of the probate court's finding, we conclude it was legally sufficient to support the finding that there was no agreement by Whiting to adopt Summer. Of the eight witnesses who testified, not one stated that Whiting agreed to adopt Summer. There is no evidence that a formal adoption proceeding was ever contemplated by Whiting, nor is there evidence that Whiting made an express promise to adopt Summer. Although all of the witnesses testified to the loving "father-daughter" relationship between Whiting and Summer, emotional bonds do not impute the legal bond of adoption absent evidence of an agreement to adopt. *See Johnson v. Chandler*, No. 14-03-00123-CV, 2004 WL 1946077,

at *4 (Tex. App.—Houston [14th Dist.] Sept. 2, 2004, no pet.) (mem. op.); *Acevedo v. Acevedo*, No. 03-03-00309-CV, 2004 WL 635321, at *3 (Tex. App.—Austin Apr. 1, 2004, no pet.) (mem. op.); *see also Estate of Castaneda*, 687 S.W.2d at 466 (fact that alleged adoptive father supported appellants and referred to them as his children was insufficient to establish an adoption by estoppel absent evidence of an agreement or promise to adopt). Accordingly, we hold the evidence was legally sufficient to support the finding.

With regard to the factual sufficiency challenge, and reviewing all of the evidence presented to the probate court, we cannot say the evidence contrary to the finding is so overwhelming as to be manifestly wrong and unjust. While there was evidence that Whiting listed Summer as his dependent on his benefits applications, there is also evidence that Whiting referred to Summer as his common-law wife's daughter. Additionally, the record is devoid of any evidence that Whiting either expressly or indirectly agreed to adopt Summer. Accordingly, we hold that the evidence is factually sufficient to support the probate court's finding of fact.

Spratt's issues on appeal are overruled, and the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice